FRANKIE LEVI COLE, APPELLANT, V.
SCOTT ISHERWOOD ET AL., APPELLEES.

642 N.W.2d 524

Filed April 9, 2002.   No. A-00-665.

Frankie Levi Cole, pro se.

Don Stenberg, Attorney General, and Jennifer M. Amen for appellee.

Sievers, Carlson, and Moore, Judges.

Carlson, Judge.

## INTRODUCTION

Frankie Levi Cole appeals from an order of the district court for Lancaster County filed June 12, 2000, sustaining the defendants' demurrer to Cole's third amended petition and dismissing Cole's action. The defendants are Scott Isherwood, Michelle D. Williams, Sgt. Chad J. Haney, William Curtis, John Rudgis, Dan Schmuecker, Dr. John Cherry, Frank X. Hopkins, Harold Clarke, and Karen J. Foster. For the reasons set forth below, we affirm.

## BACKGROUND

At all times relevant to this action, Cole has been in the custody of the Nebraska Department of Correctional Services (DCS). In October 1998, Cole was assigned a new cellmate who smokes. Cole alleged that his cellmate smoked in their cell in violation of DCS rules, causing Cole to experience emphysema-like symptoms. Cole claims that because of this, he wrote an informal grievance to Isherwood, the unit manager in Cole's housing unit, requesting a cell change. The record shows that Cole's request was denied. Cole alleges that he then wrote to Hopkins, the warden of the Nebraska State Penitentiary, about the problem and

subsequently to Karen Shortridge, the associate director of DCS, acting in place of Clarke, the director of DCS. Cole alleges that Shortridge also denied his request for a cell change.

Cole claims that during this same time period, he told DCS that he had tested positive for the tuberculosis virus and that his condition would be adversely affected by secondhand smoke exposure. Cole alleges that DCS medical personnel, under Cherry's direction, refused to acknowledge the risk to Cole's health.

On January 22, 1999, Cole and his cellmate got into an altercation. Cole alleges that his cellmate attacked him, jamming his thumb in the cell door and breaking two of Cole's personal items. Cole alleges that he then wrote an interview request, known as a kite, to the medical department requesting that a doctor examine his hand. Cole alleges that a doctor did not examine his hand until January 26. X rays were taken of Cole's hand on January 28, which showed a broken bone in Cole's hand.

On February 1, 1999, Cole saw an orthopedic doctor who recommended surgery, which was performed on February 11. Cole claims that during this time period, he notified Hopkins on more than one occasion that DCS employees were failing to promptly treat his hand.

On February 5, 1999, a second altercation occurred between Cole and his cellmate. Subsequently, Cole was examined by Cherry and the DCS medical staff and received stitches for a cut to his eye. Cole alleges that the doctor who inserted the stitches was negligent, causing Cole to be disfigured. Subsequently, a disciplinary hearing was held concerning Cole's second altercation with his cellmate, and disciplinary sanctions were imposed against Cole.

Cole alleges that after surgery, his hand remained in a cast until February 27, 1999. Cole claims that prior to the removal of the cast, one of the pins placed in his hand during surgery broke through his skin causing an infection. Cole claims that this happened because of DCS' failure to assign him the lower bunk, even after he made this request to Foster, a housing unit manager. Cole claims that the effort required to get up to the top bunk caused too much stress on his cast. Additionally, Cole states that on January 22, he received a work assignment from Curtis, which he was incapable of performing because of his thumb injury.

Because of Cole's nonperformance, Curtis issued a misconduct report. A disciplinary hearing was held on March 3. After the hearing, Schmuecker and Rudgis, disciplinary committee members, imposed a 14-day room restriction for Cole's behavior.

On July 2, 1999, Cole filed suit against the defendants for the above allegations. The defendants demurred to Cole's initial petition as well as Cole's first and second amended petitions. The subject of this action is Cole's third amended petition, which he filed on April 3, 2000. In that petition, Cole brought suit against the defendants in their individual capacities seeking monetary damages and in their official capacities to the extent that prospective injunctive relief might apply. Cole brought his action pursuant to 42 U.S.C. § 1983 (Supp. V 1999), Neb. Rev. Stat. §§ 25-536 and 24-302 (Reissue 1995), and Neb. Const. art. I, § 13. Cole alleges that the defendants violated his rights under both federal and state law by placing him in a cell with an inmate who smokes and is incarcerated for a violent crime. Cole claims that his rights were also violated by the altercations that arose between him and his cellmate and by the subsequent medical treatment he received for his injuries resulting from those altercations.

On May 8, 2000, the defendants filed an amended demurrer to Cole's third amended petition, stating that the court lacked jurisdiction over Cole's claims and that Cole's petition does not state facts sufficient to constitute a cause of action.

On May 24, 2000, after a telephonic hearing, the trial court issued an order sustaining the defendants' demurrer on all grounds and dismissed Cole's petition. The court found that it was reasonably unlikely that Cole could amend his petition to correct the grounds stated in the defendants' demurrer. Cole appeals.

## ASSIGNMENTS OF ERROR

On appeal, Cole alleges that the trial court erred in sustaining the defendants' demurrer, finding both that he failed to state an action against the defendants in their individual capacities and that it lacked jurisdiction to hear Cole's claims.

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well

pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Northwall v. State*, 263 Neb. 1, 637 N.W.2d 890 (2002).

■ When a demurrer to a petition is sustained, a court must grant leave to amend the petition unless it is clear that no reasonable possibility exists that an amendment will correct the defect. *Id.*

## ANALYSIS

On appeal, Cole alleges that the trial court erred in sustaining the defendants' demurrer, finding both that he failed to state an action against the defendants in their individual capacities and that it lacked jurisdiction to hear Cole's claims.

■ It is not only within the power, but it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Pratt v. Clarke*, 258 Neb. 402, 604 N.W.2d 822 (1999). When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law, which requires an appellate court to reach a conclusion independent from that of the trial court. *Id.*

Cole claims that the trial court erred in finding that it lacked jurisdiction over his claims because he had not properly complied with the State Tort Claims Act (Act).

Neb. Rev. Stat. § 81-8,209 (Reissue 1996) states:

The State of Nebraska shall not be liable for the torts of its officers, agents, or employees, and no suit shall be maintained against the state, any state agency, or any employee of the state on any tort claim except to the extent, and only to the extent, provided by the State Tort Claims Act. The Legislature further declares that it is its intent and purpose through such act to provide uniform procedures for the bringing of tort claims against the state or an employee of the state and that the procedures provided by such act shall be used to the exclusion of all others.

Cole brought his action against the defendants in their individual capacities for monetary damages and in their official capacities concerning prospective injunctive relief. Cole contends that because he sued the defendants in their individual capacities, his claims do not fall under the Act. Specifically, Cole

points to Neb. Rev. Stat. § 81-8,210(4) (Reissue 1996) which defines a tort claim as:

> Tort claim shall mean any claim against the State of Nebraska for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under circumstances in which the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death but shall not include any claim accruing before January 1, 1970, *and any claim against an employee of the state for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of the employee while acting within the scope of his or her employment occurring on or after August 25, 1989*[.]

(Emphasis supplied.)

Cole erroneously interprets § 81-8,210(4) to read that any claim against a state employee occurring on or after August 25, 1989, is not included as a tort claim under the Act. Rather, we read the definition of a tort claim to include claims against the State for monetary damages accruing on or after January 1, 1970, and claims against a state employee for monetary damages accruing on or after August 25, 1989.

In 1989, the Legislature added to § 81-8,210(4) the language emphasized above, "any claim against an employee of the state . . . while acting within the scope of his or her employment occurring on or after August 25, 1989." See 1989 Neb. Laws, L.B. 541.

The Introducer's Statement of Intent for L.B. 541 reads:

> The purpose of LB 541 is to require that any claim filed against an employee of the State of Nebraska be subject to and controlled by the provisions of the State Tort Claims Act.
>
> Current law permits a litigant to file action against a state employee without naming the State as party in the claim. If processed in this manner, the litigant is not bound by the provisions of the State Tort Claims Act. Consequently, the two-year statute of limitations is not applicable and the case

may be decided by a jury instead of a judge. The legislative review of an award exceeding $50,000 is also denied. Once a judgment is awarded, [t]he State's statutory duty of indemnity requires it pay the judgment on behalf of the employee.

LB 541 will eliminate circumvention of the State Tort Claims Act while preserving assurances to employees that they are not personally liable while performing duties as state workers.

Committee on Business and Labor, 91st Leg., 1st Sess. (Feb. 27, 1989).

■ In addition to the legislative history above, we have held that the requirements of the Political Subdivisions Tort Claims Act apply where an individual is sued in his or her individual capacity, but is performing duties within the scope of employment. *Cole v. Wilson*, 10 Neb. App. 156, 627 N.W.2d 140 (2001). See, also, *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997); *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995). In the instant case, it is clear from the allegations in Cole's petition that all of Cole's claims against the various defendants arose within the scope of the defendants' employment. Therefore, Cole's claims fall within the Act, and the requirements of that Act apply.

Neb. Rev. Stat. § 81-8,213 (Reissue 1996) states, in relevant part, "[n]o suit shall be permitted under the State Tort Claims Act unless the State Claims Board has made final disposition of the claim . . . ."

The record shows that Cole initially filed suit against the defendants on July 2, 1999. In his third amended petition, Cole claims that he filed his claim with the State Claims Board on March 31 and that his claim was denied on August 11. Clearly then, Cole did not meet the mandatory requirement set forth in § 81-8,213, because he filed suit in district court prior to the State Claims Board's final disposition of his claim. Given this fact, the district court correctly granted the State's demurrer regarding Cole's claims under the Act. Because Cole filed his petition prior to the denial of his claims by the State Claims Board, the district court lacked jurisdiction to hear Cole's claim under the Act. Given that the district court was without jurisdiction, this court is also without jurisdiction to consider this claim.

■ Nonetheless, there remains a question as to whether Cole has a valid cause of action against the defendants under § 1983. Under federal law, only two factual allegations are necessary to state a cause of action under § 1983: (1) a defendant's deprivation of a plaintiff's right secured by the Constitution and laws of the United States and (2) the deprivation occurred under color of law. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

■ The district court found that Cole had met this liberal pleading standard, but failed to allege that he had exhausted his administrative remedies prior to filing an action pursuant to § 1983. In his third amended petition, Cole sought both monetary damages and injunctive relief. The Nebraska Supreme Court has concluded that where a prisoner has requested both monetary damages and injunctive relief with respect to prison conditions under § 1983, the Prison Litigation Reform Act requires that the prisoner must exhaust his or her administrative remedies before bringing such action. *Pratt v. Clarke*, 258 Neb. 402, 604 N.W.2d 822 (1999). Included in those administrative remedies is the ability to file a claim under the Act. See 68 Neb. Admin. Code, ch. 2, § 005.01 (1994).

In *Pratt v. Clarke*, the Nebraska Supreme Court specifically held that the remedies of the Act must be exhausted prior to the bringing of an action under § 1983. In the instant case, Cole failed to exhaust his remedies under the Act because he filed his claim under the Act in an untimely manner. Because Cole failed to exhaust his remedies under the Act, Cole may not bring an action under § 1983. Therefore, the district court lacked jurisdiction to hear Cole's § 1983 claims and correctly granted the defendants' demurrer based on this fact.

Last, Cole claims that the district court erred in finding that Neb. Rev. Stat. § 20-148 (Reissue 1997) does not apply to the instant case to grant Cole relief. Section 20-148(1) states:

> Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil

action or other proper proceeding for redress brought by such injured person.

We note that although Cole included a claim under § 20-148 in his previous petitions, Cole did not include such a claim in his third amended petition. Even if a liberal construction of Cole's third amended petition includes a claim under § 20-148, in *Cole v. Clarke*, 8 Neb. App. 614, 598 N.W.2d 768 (1999), we stated that § 20-148 provides a private cause of action for private acts of discrimination by private employers and does not apply to individuals acting in their capacities as public officials. Therefore, the trial court did not err in concluding that Cole does not have a cause of action under § 20-148.

## CONCLUSION

For the reasons set forth above, we conclude that the trial court lacked jurisdiction to hear either Cole's claims under the Act or Cole's § 1983 claims. Additionally, Cole has no cause of action under § 20-148. Accordingly, the district court properly sustained the defendants' demurrer on lack of jurisdiction. The district court's order is affirmed.

AFFIRMED.